1

2

3                                                                    O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   DAMIAN LANGERE, on behalf of  )   Case No. CV 15-00191 DDP (AJWx)
     himself and others similarly  )
12   situated,                     )
                                   )
13                Plaintiff,       )   **ORDER GRANTING DEFENDANT'S MOTION**
                                   )   **TO COMPEL ARBITRATION**
14       v.                        )
                                   )
15   VERIZON WIRELESS SERVICES,    )
     LLC,                          )   [Dkt. 12, 29 and 37]
16                                 )
                  Defendants.      )
17   _____  )

18

19       Presently before the court is Defendant Verizon Wireless

20   Services, LLC ("Verizon")'s Motion to Compel Arbitration.  Having

21   considered the submissions of the parties and heard oral argument,

22   the court grants the motion and adopts the following Order.

23   **I.   Background**

24       Plaintiff activated a wireless service account with Defendant

25   Verizon June 6, 2011. (Citizen Decl., Ex. 1.)  He electronically

26   signed a sales receipt containing the the following statement:

27       I AGREE TO THE CURRENT VERIZON WIRELESS CUSTOMER AGREEMENT
         (CA), INCLUDING THE CALLING PLAN, (WITH EXTENDED LIMITED
28       WARRANTY/SERVICE CONTRACT, IF APPLICABLE), AND OTHER TERMS
         AND CONDITIONS FOR SERVICES AND SELECTED FEATURES I HAVE
         AGREED TO PURCHASE AS REFLECTED ON THE RECEIPT, AND WHICH

1        HAVE BEEN PRESENTED TO ME BY THE SALES REP. AND WHICH I HAD
THE OPPORTUNITY TO REVIEW. I UNDERSTAND THAT I AM AGREEING
2        TO . . . SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER
MEANS INSTEAD OF JURY TRIALS AND OTHER IMPORTANT TERMS IN
3        THE CA.

4  (Citizen Decl., Ex. 1 at 8.)  Plaintiff states that the information

5  was not explained to him and the receipt was "densely-worded,

6  written in small font, and was difficult to read." (Langere Decl.

7  ¶¶ 2-3.)

8      Plaintiff was also given a document entitled "Your Guide,"

9  which contained the full Customer Agreement ("2011 Customer

10 Agreement") referenced in the sales receipt, including an

11 Arbitration Agreement.  (Citizen Decl. ¶ 5; Citizen Decl., Ex. 2.)

12 The Arbitration Agreement in the 2011 Customer Agreement applied to

13 "ANY DISPUTE THAT RESULTS FROM THIS AGREEMENT OR FROM THE SERVICES

14 YOU RECEIVE FROM" Verizon, and specifically prohibited class

15 arbitrations. (Citizen Decl., Ex. 2 at 45.)  On June 9, 2011,

16 Verizon also emailed Plaintiff a notification of activation, which

17 included a link to a confirmation letter.  (Mot. at 3; Citizen

18 Decl., Ex. 3.)  The letter directed Plaintiff to Verizon's website,

19 where he could view the Customer Agreement at any time. (Id.)

20     On October 30, 2012, Plaintiff upgraded his phone and entered

21 into a new two-year service contract.  (Citizen Decl., Ex. 4.)  He

22 electronically signed another sales receipt that contained a

23 statement nearly identical to the one he had signed on June 6,

24 2011.[1]  (Id.)  Plaintiff was then provided with "various documents

25 and brochures," including a thirty-two page "Your Guide" containing

26 the Customer Agreement ("2012 Customer Agreement"), which, like the

27 _____

28     [1] The October 30, 2012 statement did not abbreviate the terms
"representative" or "Customer Agreement."

1   2011 Customer Agreement, included an Arbitration Agreement.  (Id.

2   ¶ 11; Citizen Decl., Ex. 5.)  While the 2011 Arbitration Agreement

3   referred to "ANY DISPUTE THAT RESULTS FROM THIS AGREEMENT OR FROM

4   THE SERVICES YOU RECEIVE FROM" Verizon, the 2012 version applied to

5   "ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS

6   AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE

7   FROM" Verizon.  (Citizen Decl., Ex. 5 at 23.)  Like the 2011

8   Arbitration Agreement, the 2012 Arbitration Agreement specifically

9   prohibited class or collective arbitrations.  (Id.)  On November 2,

10  2012, Plaintiff received a letter with a notification of upgrade

11  and details about his account.  (Citizen Decl., Ex. 6.)

12       When Plaintiff upgraded his phone and entered into the new two

13  year agreement on October 30, 2012, he also purchased Total

14  Equipment Coverage ("TEC"), and received an accompanying TEC

15  brochure.  (Citizen Decl. ¶ 14; Citizen Decl., Exs. 4, 5.)  TEC is

16  a combined service that offers an Extended Warranty and Wireless

17  Phone Protection plan at a discounted rate.  (Citizen Decl. ¶ 13;

18  Citizen Decl., Ex. 7.)  The Extended Warranty covers mechanical or

19  electrical defects for a phone after a manufacturer's warranty

20  expires. (Citizen Decl. ¶ 13; Citizen Decl., Ex. 7.)  Wireless

21  Phone Protection provides insurance for loss, theft, and damages to

22  a device.  (Id.)  TEC must be purchased within thirty days of

23  activation or device upgrade, and is available only to Verizon

24  customers who have service with Defendant and have, therefore,

25  agreed to the Customer Agreement.  (Citizen Decl. ¶¶ 7, 13.)

26  Plaintiff's service summary reflects "Tec Asurion"[2] as a "Current

27  _____

28       [2] Liberty Mutual Insurance company, or one of its affiliates,
                                                    (continued...)

3

1    Feature[]" on his device at the rate of $9.99 a month.  (Citizen

2    Decl., Ex. 6 at 71.)

3         According to the terms of the 2011 and 2012 Customer

4    Agreements, a customer's "Plan" includes the customer's "monthly

5    allowances and features."   (Citizen Decl., Ex. 2 at 42; Citizen

6    Decl., Ex. 5 at 19.)  The terms state that "your Plan and any

7    Optional Services you select are your Service." (Id.)  After the

8    Arbitration Agreement section, separated by a horizontal line and

9    "Important Information," the 2012 Customer Agreement lists several

10   categories of "Optional Services Terms and Conditions":

11        • Media Center and Verizon Apps
          • Messaging Programs
12        • Usage Controls
          • Caller ID
13        • Home Phone Connect Adaptor Device ("Device") & Home
            Phone Connect Service ("Service")
14        • HomeFusion Broadband Service
          • Content Filters
15        • VZ Navigator
          • VZ Navigator Global
16        • Push to Talk
          • Group Communication
17        • Verizon Wireless Roadside Assistance
          • International Eligibility
18        • International Long Distance
          • International Roaming
19        • Cruise Ship Service
          • Plan and Feature Discounts
20
     (Citizen Decl., Ex. 5 at 25-29.)  The Extended Warranty and
21
     Wireless Phone Protection plans provided under TEC are not
22
     specifically listed as Optional Services.
23
          The 32-page "Your Guide" document concludes with a final
24
     section titled "Extended Limited Warranty or Service Contract."
25

26   ───────────────

27        [2](...continued)
     underwrites the policy for Wireless Phone Protection.  Asurion
28   Insurance Services, Inc. is "the agent and provides the claims
     servicing under this program." (Citizen Decl., Ex. 7.)

(Citizen Decl., Ex. 5 at 31.)  The heading of this section differs from the "Optional Services" section, and is listed in a more prominent style similar to that used for preceding sections such as "Account Manager," "Wireless Safety & Assistance," and "Return & Exchange Policy." (<u>Id.</u> at 29-30.)

The language in both "Your Guide" and a separate "Verizon Wireless Extended Limited Warranty or Service Contract" brochure specify that if a device is purchased in California, the document is a "SERVICE CONTRACT" rather than an "EXTENDED LIMITED WARRANTY." (Citizen Decl., Ex. 5 at 31; Esensten Decl., Ex. B at 22.)  The contract has an arbitration clause that mandates arbitration for "[a]ny disputes . . . arising under this Warranty" between Defendant and residents of Connecticut.  (Citizen Decl., Ex. 5 at 32; Esensten Decl., Ex. B at 23.)  It also states that the terms within it are Defendant's "complete Warranty or Service Contract for [the] product." (<u>Id.</u>)  The TEC brochure contained the Wireless Phone Protection insurance policy terms, which provided that "disputes or controversies of any nature whatsoever . . . arising out of, relating to, or in connection with" the policy be subject to nonbinding arbitration.  (Citizen Decl., Ex. 7 at 74.)

The crux of Plaintiff's Complaint is that the extended warranty "does not provide any greater protection for the first year than does the phone manufacturer's identical warranty." (Compl. ¶ 19.)  In other words, because the extended warranty must be purchased within thirty days of the initial transaction, Plaintiff contends that customer will make a year's worth of monthly payments for no benefit because the first year of extended warranty coverage overlaps with coverage already provided by the

phone's maufacturer.  (Id. ¶¶ 17-18.)  Plaintiff further alleges
that no reasonable person would "have reason to believe that his
first twelve payments to Verizon for the 'extended' warranty
portion of the 'Total Equipment Coverage' were both duplicative and
unnecessary." (Id. ¶ 28.)

Plaintiff alleges violations of violations of the Federal
Communications Act, 47 U.S.C. § 151, et seq. and California's
consumer protection laws, including the Consumers Legal Remedies
Act ("CLRA"), Cal. Civil Code § 1750 et seq.; the Unfair
Competition Act ("UCL"), Cal. Business & Professions Code § 17200
et seq.; and the False Advertising Law ("FAL"), Cal. Business &
Professions Code § 17500 et seq.  (Id. ¶ 8.)  Verizon now moves to
compel arbitration.

**II.  Legal Standard**

A party to an arbitration agreement may petition a district
court for an order directing that arbitration proceed as provided
for in the agreement.  9 U.S.C. § 4.  Under the Federal Arbitration
Act ("FAA"), 9 U.S.C. § 1 et seq., a written agreement requiring
controversies between the contracting parties to be settled by
arbitration is "valid, irrevocable, and enforceable, save upon such
grounds as exist at law or in equity for the revocation of any
contract."  9 U.S.C. § 2.  The FAA reflects a "liberal federal
policy favoring arbitration agreements" and creates a "body of
federal substantive law of arbitrability."  Moses H. Cone Mem.
Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).  The FAA
therefore preempts state laws that "stand as an obstacle to the
accomplishment of the FAA's objectives."  AT&T Mobility LLC v.
Concepcion, 563 U.S. 333, 343 (2011).  This includes "defenses that

6

1  apply only to arbitration or that derive their meaning from the

2  fact that an agreement to arbitrate is at issue," as well as state

3  rules that act to fundamentally change the nature of the

4  arbitration agreed to by the parties.  <u>Id.</u> at 339, 1750; <u>See also</u>

5  <u>DirectTV, Inc. v. Imbrugia</u>, 136 S.Ct. 463, 471 (2015).

6  **III. Discussion**

7       A.   Applicability of 2012 Customer Agreement

8       Verizon contends that the arbitration provision of the 2012

9  Customer Agreement applies, and that Plaintiff must therefore

10 arbitrate his warranty coverage claim.  (Mot. at 12.)  To determine

11 whether the parties agreed to arbitrate a certain matter, "courts

12 generally . . . should apply ordinary state-law principles that

13 govern the formation of contracts."  <u>First Options of Chicago, Inc.</u>

14 <u>v. Kaplan</u>, 514 U.S. 938, 944 (1995).  "[T]he outward manifestation

15 or expression of assent is the controlling factor" when determining

16 contract terms.  <u>Windsor Mills, Inc. v. Collins & Aikman Corp.</u>, 101

17 Cal.Rptr. 347, 350 (Ct. App. 1972).

18      The 2012 Customer Agreement contained the 2012 Arbitration

19 Agreement, which states that the customer agrees to arbitrate "ANY

20 DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT

21 OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM"

22 Verizon.  Plaintiff responds that the 2012 Arbitration Agreement

23 has no bearing on his extended warranty-based claims.  Plaintiff

24 argues that the 2012 Customer Agreement includes an integration

25 clause "regarding Service," disclaims any warranties "about your

26 Service [or] your device," and specifically states that "your Plan

27 and any Optional Services you select are your Service."  Although

28

1   the Customer Agreement does include a section regarding extended

2   warranties, such warranties are not listed as "Optional Services."

3        Plaintiff contends that his warranty claims are covered not by

4   the 2012 Customer Agreement, but rather by a separate Extended

5   Warranty Contract.[3]  According to Plaintiff, this separate document

6   describes the terms and conditions of the warranty program and

7   provides for monthly payments specifically for warranty coverage,

8   which terms are not mentioned in the Customer Agreement.  The

9   purported Extended Warranty contract further provides that only

10  Connecticut residents must arbitrate "any disputes" arising under

11  the extended warranty contract.

12       The court is not persuaded that the language of the TEC

13  brochure constitutes a distinct "Extended Warranty Agreement"

14  wholly separate from the Customer Agreement.  First, extended

15  warranty coverage under the TEC plan is only available to existing

16  Verizon customers, who have by definition accepted the Customer

17  Agreement.  Second, the Customer Agreement's arbitration language

18  refers to "any equipment, products, and services" received from

19  Verizon.  The Agreement further defines "Service" as comprised of

20  "your Plan and any optional services."  The term "plan," in turn,

21  is defined as "monthly allowances and features."  Plaintiff's "Tec

22  Asurion" coverage, of which extended warranty coverage is a part,

23  is listed in Plaintiff's service summary as a "current feature."

24  There appears to be little doubt, therefore, that Plaintiff's

25

26

27  _____

28       [3] It is unclear to what document Plaintiff refers.  The court
    presumes Plaintiff refers to the TEC brochure.

1  extended warranty coverage is part of the "Service" provided by
2  Verizon.[4]

3       The language of the 2012 Arbitration Agreement covers
4  Plaintiff's claims here.  An arbitration clause that covers claims
5  and controversies "arising out of or relating to" an agreement is
6  "a broad arbitration clause."  See Prima Paint Corp. v. Flood &
7  Conklin Mfg. Co., 388 U.S. 395, 398 (1967).  "Broad arbitration
8  clauses are not limited to claims that literally arise under the
9  contract but embrace all disputes between the parties having a
10 significant relationship to the contract, regardless of the label
11 attached to the dispute." Rhodall, 2011 WL 4036418 at *4 (citing
12 Pennzoil Exploration & Production Co. v. Ramco Energy Ltd., 139
13 F.3d 1061, 1067 (5th Cir. 1998)).  The Ninth Circuit has also
14 recognized the distinction between arbitration clauses that govern
15 disputes "arising under" an agreement and those that govern
16 disputes "related to" an agreement.  See Tracer Research Corp. v.
17 Nat'l Envtl. Servs. Co., 42 F.3d 1292, 1295 (9th Cir. 1994).  The
18 arbitration language here, which refers to "ANY DISPUTE THAT IN ANY
19 WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY
20 EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM" Verizon, is
21 sufficiently broad to encompass Plaintiff's warranty-based claims.
22      B.   Unconscionability
23
24 _____

25      [4] Even if warranty coverage were not part of the "Plan"
   provided by Verizon, it is difficult to imagine how such coverage
26 would not constitute an "optional service," notwithstanding the
   omission of extended warranty coverage from the list of possible
27 optional services contained within the Customer Agreement.  As
   Plaintiff himself points out, he need not have exercised the option
28 to obtain TEC coverage.  Plaintiff did, however, opt for that
   additional service.

"[A]greements to arbitrate may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Concepcion, 563 U.S. at 339; See also Kilgore v. KeyBank, Nat. Ass'n, 673 F.3d 947, 963 (9th Cir.2012) ("Concepcion did not overthrow the common law contract defense of unconscionability whenever an arbitration clause is involved. Rather, the Court affirmed that the [FAA's] savings clause preserves generally applicable contract defenses such as unconscionability . . . ."); Community State Bank v. Strong, 651 F.3d 1241, 1267 n.28 (11th Cir. 2011) ("The ability of such contractual defects to invalidate arbitration agreements is not affected by the Supreme Court's decision in [Concepcion]. . . .").

Unconscionability has both a "procedural" and "substantive" element.  See Kilgore, 673 F.3d at 963.  The former generally describes an absence of meaningful choice on the part of one of the parties, while the latter applies to contract terms which are unreasonably favorable to the other party. Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1531 (1997).  "[A]n arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable." Pokorny v. Quixtar, 601 F.3d 987, 996 (9th Cir. 2010).  California courts apply a "sliding scale" analysis in making this determination. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000).  Both procedural and substantive unconscionability must be present for a contract to be declared unenforceable, but they

1  need not be present to the same degree.  Id.; See also Harper v.

2  Ultimo, 113 Cal. App. 4th 1402, 1406 (2003).

3          1.  Procedural Unconscionability

4       Procedural unconscionability "concerns the manner in which the

5  contract was negotiated and the respective circumstances of the

6  parties at that time."  Ferguson v. Countrywide Credit Indus.,

7  Inc., 298 F.3d 778, 783 (9th Cir. 2002).  Courts examine two

8  factors for procedural unconscionability: (1) oppression, which

9  focuses on bargaining power disparity, absence of meaningful

10  choice, and lack of negotiation; and (2) surprise, which refers to

11  hidden terms, prolix forms, and whether the contractual terms meet

12  the reasonable expectations of the weaker party.  See id.

13       Plaintiff first argues, briefly, that the Customer Agreement

14  is procedurally unconscionable because it is a contract of

15  adhesion.  (Opp. at 17-18.)  The fact that a contract is adhesive,

16  however, "is not, alone, sufficient to render it unconscionable."

17  Malone v. Superior Court, 226 Cal. App. 4th 1551, 1561(2014); See

18  also Zaborowski v. MHN Gov't Servs., Inc., 936 F. Supp. 2d 1145,

19  1152 (N.D. Cal. 2013), aff'd, 601 F. App'x 461 (9th Cir. 2014).

20  Indeed, as Concepcion acknowledged, "the times in which consumer

21  contracts were anything other than adhesive are long past."

22  Concepcion, 563 U.S. at 346-47.  Although Plaintiff cites to cases

23  highlighting contracts of adhesion as significant factors in the

24  unconscionability analysis, those cases arose in the employment

25  context, and did not concern consumer contracts.  (Opp. at 17-18,

26  citing Elite Logistics Corp. v. Mol Am., Inc., 2012 WL 2366397

27  (C.D. Cal 2012) and Poublon v. Robinson Co., No. 12-cv-06654-CAS,

28  2015 WL 588515 (C.D. Cal. Jan. 12, 2015).)  In the consumer

setting, "absent unusual circumstances, use of a contract of adhesion establishes a minimal degree of procedural unconscionability." Hahn v. Massage Envy Franchising, LLC, No. 12cv153 DMS, 2014 WL 5100330 at *6 (S.D. Cal. Sept. 25, 2014) (citing Gatton v. T Mobile USA, Inc., 152 Cal. App. 4th 571 (2007)).

Plaintiff further contends that the Arbitration Agreement is procedurally unconscionable because Verizon concealed its terms from Plaintiff and did not allow him to review those terms until after he had agreed to them. A party who has received an offer but does not know all of the terms of the offer may still accept the terms by demonstrating acceptance through his conduct. Windsor Mills, 101 Cal.Rptr. at 350. A customer cannot avoid arbitration when he later "notic[es] the statement of terms but den[ies] reading it closely enough to discover the agreement to arbitrate." Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1148 (7th Cir. 1997).

Here, Verizon argues that Plaintiff signed an electronic receipt that alerted him to the existence of the Customer Agreement and additional terms, including the settlement of disputes by arbitration. (Citizen Decl., Ex. 4.) He was then provided with "various documents and brochures," including a thirty-two page "Welcome Guide" containing the Customer Agreement. (Langere Decl., ¶ 11; Citizen Decl., Ex. 5.) The heading "CUSTOMER AGREEMENT & IMPORTANT INFORMATION" is displayed in large, capital letters no smaller than other section identifiers. Furthermore, the Arbitration Agreement within the Customer Agreement is displayed beneath a subheading that reads, "How Do I Resolve Disputes With Verizon Wireless?" In addition, the Arbitration Agreement, unlike

1  other portions of the Customer Agreement, is displayed entirely in
2  capital letters.  Thus, contrary to Plaintiff's argument, Verizon
3  did not conceal the terms of the Arbitration Agreement.

4       Nor does the fact that Plaintiff did not receive the Customer
5  Agreement prior to his purchase establish a high degree of
6  procedural unconscionability.  "[T]he economic and practical
7  considerations involved in selling services to mass consumers . . .
8  make it acceptable for terms and conditions to follow the initial
9  transaction."  Bischoff v. DirecTV, Inc., 180 F. Supp. 2d 1097,
10 1105 (C.D. Cal. 2002) (citing ProCD, Inc. v. Zeidenberg, 86 F.3d
11 1447, 1451 (7th Cir.1996)).  As the Gateway court explained,
12 "[C]ashiers cannot be expected to read legal documents before
13 ringing up sales.  . . . .  Customers as a group are better off
14 when vendors skip costly and ineffectual steps such as telephonic
15 recitation, and instead use a simple approve-or-return device.
16 Competent adults are bound by such documents, read or unread."
17 Gateway, 105 F.3d at 1149.

18      Here, Plaintiff acknowledged that he had the opportunity to
19 review the Customer Agreement when he signed the receipt.  More
20 importantly, even if Plaintiff was not privy to the exact terms of
21 the Arbitration Agreement at the time he accepted the Customer
22 Agreement, by the terms of the Customer Agreement, Plaintiff had
23 fourteen days after acceptance to review the terms of the Customer
24 Agreement and cancel his service if he so desired.  (Citizen Decl.,
25 Ex. 5 at 20.)

26      Given the practical realities making it unrealistic for
27 communication service providers to negotiate all terms with
28 customers before beginning to provide the service, the sufficiently

1   prominent wording of the Customer Agreement and Arbitration

2   Agreement, and Plaintiff's ability to return the device and

3   repudiate the agreement within fourteen days of purchase, the

4   Customer Agreement at issue here is only minimally procedurally

5   unsconscionable.

6          2.   Substantive Unconscionability

7       Substantive unconscionability focuses on the one-sidedness of

8   the contract terms.  Armendariz, 24 Cal.4th at 114.  "Where an

9   arbitration agreement is concerned, the agreement is unconscionable

10  unless the arbitration remedy contains a 'modicum of

11  bilaterality.'"  Ting v. AT&T, 319 F.3d at 1149 (citing Armendariz,

12  319 F.3d at 117).

13      The majority of Plaintiff's argument regarding

14  unconsionability appears to pertain not to the Arbitration

15  Agreement, but to other portions of the Customer Agreement.  For

16  example, although Plaintiff is correct that portions of the

17  Customer Agreement appear to limit available damages, the

18  Arbitration Agreement itself states that "AN ARBITRATOR CAN AWARD

19  YOU THE SAME DAMAGES AND RELIEF . . . AS A COURT WOULD."  (Citizen

20  Decl., Ex. 5 at 23.)  This court's substantive unconscionability

21  analysis is confined to the terms of the Arbitration Agreement.

22  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395,

23  403 (1968) ("[I]n passing upon a[n] application for a stay while

24  the parties arbitrate, a federal court may consider only issues

25  relating to the making and performance of the agreement to

26  arbitrate.").

27      Plaintiff argues that the Arbitration Agreement is

28  substantively unconscionable because it exempts small claims

actions.  (Opp. at 23.)  Plaintiff appears to suggest that because it is more likely that Verizon will pursue small claims actions against customers than the reverse, this provision lacks bilaterality, citing the district court's Order in Merkin v. Vonage America, No. 13-cv-08026 CAS, 2014 WL 457942 (Feb. 3, 2014) ("Merkin").  The Ninth Circuit, however, reversed the district court's denial of the defendant's motion to compel arbitration, and remanded with instructions to grant the motion.  Merkin v. Vonage Am., 639 Fed. Appx. 481 at 482 (9th Cir. 2016).  Furthermore, the district court did not conclude that the exemption of small claims from arbitration weighed in favor of unconscionability.  Merkin, 2014 WL 457942 at 10.  Rather, the court examined a contractual provision exempting small claims and three other categories of claims from arbitration and determined that the exclusion of the other categories of claims, but not small claims, rendered the provision one-sided.  Id. at 10-11.  To the extent Plaintiff contends that the preservation of both parties' rights to bring actions in small claims court works against his and consumers' favor, this court disagrees.

In some cases, barriers to pursuing statutory remedies, such as "filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable," can warrant invalidating an arbitration agreement.  American Express Co. v. Italian Colors, 133 S. Ct. 2304, 2310-11.  Those barriers to entry are absent here.  The Arbitration Agreement provides that, unless the parties agree otherwise, arbitration will take place "in the county of [the customer's] billing address."  (Citizen Decl., Ex. 5 at 23.)  The Arbitration Agreement further provides that if the

15

consumer is unable to pay the filing fee, Verizon will pay the filing fee and "any administrator and arbitrator fees charged later." (Citizen Decl., Ex. 5 at 24.) If a plaintiff is awarded less than $5,000 but greater than any settlement offer prior to arbitration, the Arbitration Agreement obligates Verizon to pay $5,000, plus attorney's fees and expenses. (<u>Id.</u>) Thus, even though Plaintiff's claims involve charges of $1.85 to $3.00 per month, the low value of claims is not itself a barrier to pursuing a claim. <u>See</u> <u>Concepcion</u>, 563 U.S. at 3251-52 (agreeing with appellate court that arbitration agreement providing an award of "a minimum of $7,500 and twice [plaintiffs'] attorney's fees if they obtain an arbitration award greater than [the] last settlement offer" was "sufficient to provide incentive for the individual prosecution of meritorious claims that are not immediately settled.").

The Arbitration Agreement here is only minimally procedurally unconscionable, and is not accompanied by any significant substantive unconscionability. The Arbitration Agreement is, therefore, enforceable.

**IV.  Conclusion**

For the reasons stated above, Defendant's Motion to Compel is GRANTED.

//

//

//

//

//

//

16

1          Counsel to file a status report six months from today's order.

2

3    IT IS SO ORDERED.

4

5

6    Dated: September 23, 2016

7                                            DEAN D. PREGERSON
                                             United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28