**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAMIAN LANGERE, on behalf of himself and others similarly situated, *Plaintiff-Appellant,* <br><br> v. <br><br> VERIZON WIRELESS SERVICES, LLC, *Defendant-Appellee.* | No. 19-55747 <br><br> D.C. No. 2:15-cv-00191- DDP-AJW <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted November 9, 2020
Pasadena, California

Filed December 29, 2020

Before: Barrington D. Parker, Jr.,[*] Paul J. Watford, and
Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay

---

[*] The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

## SUMMARY**

### Arbitration / Appellate Jurisdiction

The panel dismissed for lack of jurisdiction a Verizon Wireless customer's appeal from the district court's orders denying his motions to compel arbitration and reconsideration, and from his own voluntary dismissal, in a case in which the plaintiff brought a putative class action against Verizon for violation of federal and state consumer-protection laws.

In *Omstead v. Dell, Inc.*, 594 F.3d 1081 (9th Cir. 2010), this court held that a plaintiff can avoid arbitration and manufacture appellate jurisdiction simply by voluntarily dismissing his claims with prejudice. The panel concluded that *Omstead* has been effectively overruled by *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). The panel therefore held that a plaintiff does not create appellate jurisdiction by voluntarily dismissing his claims with prejudice after being forced to arbitrate them.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

LANGERE V. VERIZON WIRELESS SERVS.        3

**COUNSEL**

Jordan S. Esensten (argued) and Robert L. Esensten, Esensten Law, Los Angeles, California, for Plaintiff-Appellant.

Julia B. Strickland (argued) and David W. Moon, Stroock Stroock & Lavan LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

BUMATAY, Circuit Judge:

After being compelled to arbitrate by court order, can a plaintiff avoid arbitration and manufacture appellate jurisdiction simply by voluntarily dismissing his claims with prejudice? We've previously answered that question in the affirmative. *See Omstead v. Dell, Inc.*, 594 F.3d 1081 (9th Cir. 2010). But a later decision of the Supreme Court has forced us to reconsider. *See Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017). After finding that our previous approach is clearly irreconcilable with that outlined by the Court, we change our answer.

We conclude that our decision in *Omstead* has been effectively overruled by the Court's decision in *Microsoft*. And so we hold that a plaintiff does not create appellate jurisdiction by voluntarily dismissing his claims with prejudice after being forced to arbitrate them.

**I.**

Damian Langere is a Verizon Wireless customer who purchased the company's extended warranty program for his

4            LANGERE V. VERIZON WIRELESS SERVS.

cellphone.  He was unhappy to find out that the Verizon
warranty offers similar protections to those already provided
by his cellphone's manufacturer for the first year.   He
therefore brought this putative class action against Verizon
for the violation of federal and state consumer-protection
statutes.   Verizon moved to compel arbitration and stay
judicial proceedings under 9 U.S.C. § 4.[1]  The district court
obliged and granted the motion to compel arbitration. It also
denied Langere's later motion for reconsideration.

Ordinarily, a plaintiff in this position has two choices to
appeal: arbitrate the claims to completion and then appeal as
of right, *see* 9 U.S.C. § 16(a)(1)(3), (b)(1)–(3), or hope that
the courts approve an interlocutory appeal, *id.* § 16(b);
28 U.S.C. § 1292(b).  But Langere tried something different.
Finding himself in a "procedural bind," Langere voluntarily
dismissed his claims with prejudice, as he was entitled to
under Federal Rule of Civil Procedure 41(a)(1), without
leave from the district court.[2]  He did so because arbitration
was not "economically feasible," and he felt that appealing
the arbitration order was his only viable option.  He assured
the district court that he was "not refusing to prosecute his
claims," but only refusing to do so in a way that he thought
"would be futile and uneconomical."

---

[1] That section permits a party aggrieved by another party's refusal
to arbitrate to move the district court for an order directing that
arbitration proceed as agreed by the parties.

[2] Under Rule 41(a)(1)(A)(i), a plaintiff can file for voluntary
dismissal without order of the court if filed before the opposing
party serves either an answer or a motion for summary judgment.  Here,
Verizon did not file either and so Langere's dismissal was procedurally
proper.

Langere then appealed his own voluntary dismissal, and the district court's orders, to this court. Verizon moved to dismiss for lack of appellate jurisdiction. A motions panel of this court denied that motion without prejudice to renew during the merits consideration of the case. Verizon so renewed its concern about appellate jurisdiction before this panel. We now grant that motion.

## II.

### A.

Generally speaking, we may only review decisions from district courts that are "final." *See* 28 U.S.C. § 1291. That means that a party normally must raise all their claims of error in a single appeal following a final judgment. *Flanagan v. United States*, 465 U.S. 259, 263 (1984). This principle, called the final-judgment rule, is fundamental to our legal system. *See McLish v. Roff*, 141 U.S. 661, 665–66 (1891). Few have said it better than Justice Frankfurter: "Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration." *Cobbledick v. United States*, 309 U.S. 323, 325 (1940). The Supreme Court, therefore, has "resisted efforts to stretch § 1291 to permit appeals of right that would erode the finality principle and disserve its objectives." *Microsoft*, 137 S. Ct. at 1712.

On top of the general final-judgment rule, Congress has carefully designed a framework for appeals in the arbitration context. In the Federal Arbitration Act ("FAA"), Congress has expressed "a national policy favoring arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). For that

reason, the FAA "endeavors to promote appeals from orders
barring arbitration and limit appeals from orders directing
arbitration." *Bushley v. Credit Suisse First Bos.*, 360 F.3d
1149, 1153 (9th Cir. 2004) (simplified). It does so by
explicitly prohibiting the appeal of orders compelling
arbitration. *See* 9 U.S.C. § 16(b)(3). The sole exception is a
limited one:   immediate appeal of an order compelling
arbitration may only be taken under 28 U.S.C. § 1292(b).
9 U.S.C. § 16(b). That section allows interlocutory appeals
when the district judge certifies that an appeal involves a
"controlling question of law as to which there is substantial
ground for difference of opinion and that an immediate
appeal from the order may materially advance the ultimate
termination of the litigation."   28 U.S.C. § 1292(b).
Afterwards, the court of appeals may permit the appeal
within its discretion. *Id.*

Accordingly, it is "well established that § 16(b) bars
appeals of interlocutory orders compelling arbitration and
staying judicial proceedings," and that § 1292(b) is the "sole
avenue" to immediate appeal of such orders. *Johnson v.
Consumerinfo.com, Inc.*, 745 F.3d 1019, 1021–23 (9th Cir.
2014); *see also MediVas, LLC v. Marubeni Corp.*, 741 F.3d
4, 7 (9th Cir. 2014) (holding that "an order compelling
arbitration . . . may not be appealed if the court stays the
action pending arbitration").    This approach honors
Congress's efforts to funnel parties into arbitration "as
quickly and easily as possible." *Moses H. Cone Mem'l
Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). At
bottom, our job is to enforce the clear commands of
Congress. In the FAA, Congress has commanded the "rapid
and unobstructed enforcement of arbitration agreements."
*Id.* at 23.

## B.

For every rule, there's an exception.  In *Omstead*, we created one such exception to the rules for appealing arbitration orders.  In that case, like here, a district court ordered arbitration of plaintiffs' claims and stayed judicial proceedings.  594 F.3d at 1083.  In response, the plaintiffs told the district court that they would not arbitrate their claims, citing economic infeasibility and arbitration bias.  *Id*.  They also requested that the court enter a final order allowing them to appeal.  *Id.*  The district court refused, and instead dismissed the plaintiffs' claims for failure to prosecute under Federal Rule of Civil Procedure 41(b).  *Id.* at 1084.

On appeal, we held that the district court abused its discretion in dismissing the action for want of prosecution because the Rule 41(b) dismissal factors favored the plaintiffs.  *Id.*  But we then explained what the plaintiffs *should have* done instead of refusing to arbitrate its claims: we advised that plaintiffs could have obtained immediate review of the arbitration order if they voluntarily dismissed their claims with prejudice under Rule 41(a)(2). *Id.* at 1085.[3] We indicated that "a plaintiff that deems an interlocutory ruling to be so prejudicial as to deserve immediate review . . . has the alternative of dismissing the complaint voluntarily [with prejudice]."   *Id.* (quoting *John's Insulation, Inc. v. L. Addison and Associates, Inc*., 156 F.3d 101, 107 (1st Cir. 1998)).  To avoid a "useless remand," we *sua sponte* construed the district court's Rule 41(b) dismissal

---

[3] Rule 41(a)(2) permits the voluntary dismissal by court order at the request of the plaintiff, if the court finds it proper.  Fed. R. Civ. P. 41(a)(2).

as a Rule 41(a)(2) voluntary dismissal with prejudice and
proceeded to decide the merits of the case. *Id.*[4]

## C.

### 1.

Seven years after *Omstead*, the Court decided *Microsoft*.
137 S. Ct. at 1702. That case had a procedural history like
this one. The plaintiffs filed a putative class action against
Microsoft for defects in its gaming console. *Id.* at 1710.
Based on a prior class certification denial in a related case,
the district court denied class certification and struck the
class allegations. *Id.* at 1710–11. In one twist from the
instant case, the plaintiffs came to us first and petitioned for
an interlocutory appeal under Federal Rule of Civil
Procedure 23(f). *Id.* at 1711. We declined. *Id.*

The plaintiffs then returned to the district court and
moved to dismiss their case with prejudice; Microsoft
stipulated to the dismissal but maintained that such a
dismissal would not be appealable. *Id.* The district court
granted the stipulated dismissal motion, and the plaintiffs
appealed. *Id.* We granted jurisdiction over the stipulated
dismissal, holding it was a sufficiently adverse, final
decision under § 1291. *Id.*

The Supreme Court granted certiorari to resolve the
question: "Do federal courts of appeals have jurisdiction
under § 1291 and Article III of the Constitution to review an
order denying class certification . . . after the named
plaintiffs have voluntarily dismissed their claims with

---

[4] It is unclear under what authority we were able to make this *sua
sponte* conversion since none was cited.

prejudice?" *Id.* at 1712. For the reasons explained below, the Court said "no" and reversed our decision. *Id.*

**2.**

In *Microsoft*, the Court held that "[p]laintiffs in putative class actions cannot transform a tentative interlocutory order into a final judgment within the meaning of § 1291 simply by dismissing their claims with prejudice—subject, no less, to the right to 'revive' those claims if the denial of class certification is reversed on appeal." *Id.* at 1715 (simplified). The Court identified three factors demonstrating why a voluntary dismissal of class certification claims would not be treated as "final" under § 1291.

First, the Court considered it of "prime significance" that the plaintiffs' dismissal tactic would "undercut[] Rule 23(f)'s discretionary regime." *Id.* at 1714. Rule 23(f) permits the appeal of an order granting or denying class certification, but similar to an appeal under 28 U.S.C. § 1292(b), only with the approval of the court of appeals. *Compare* Fed R. Civ. P. 23(f) *with* 28 U.S.C. § 1292(b). In the Court's view, if this dismissal tactic could "yield an appeal of right," it would undermine Rule 23(f) and render the final judgment rule superfluous. *Microsoft*, 137 S. Ct. at 1714–15.

The Court also was concerned that the voluntary-dismissal tactic "invites protracted litigation and piecemeal appeals." *Id.* at 1713. It explained that the voluntary dismissal deprives appellate courts of the ability to decline an appeal and, therefore, allows the plaintiff to exclusively determine whether an immediate appeal will lie. *Id.* Furthermore, a plaintiff may deploy this method more than once, "stopping and starting the district court proceedings

with repeated interlocutory appeals." *Id.* Rule 23(f) was meant to "prevent such disruption and delay." *Id.*

The Court finally explained that the "one-sidedness" of plaintiffs' voluntary-dismissal device demonstrated that treating the dismissal as a final judgment was inappropriate. *Id.* at 1715. Recognizing a final judgment in that case would permit "plaintiffs only," and "never defendants," to force an immediate appeal. *Id.* Again, such a tactic, the Court observed, would allow litigants to disturb the rulemaking process that Congress chose to settle appellate procedures. *Id.*

In addition, three Justices would have ruled that the plaintiffs' voluntary dismissal tactic deprived the court of jurisdiction because there was no longer a case or controversy. *Id.* at 1717 (Thomas, J., concurring). Justice Thomas, along with Chief Justice Roberts and Justice Alito, concluded that when plaintiffs voluntarily dismiss their claims, "they consent[] to the judgment against them and disavow[] any right to relief [from the defendant]." *Id.* In such a case, the parties were no longer "adverse to each other on any claims," and the court of appeals could not "affect their rights" in any legally cognizable manner. *Id.* (simplified). This view was supported by the long-established rule that "a party may not appeal from the voluntary dismissal of a claim, since the party consented to the judgment against it." *Id.*; *see, e.g.*, *Evans v. Phillips*, 17 U.S. 73 (1819) (dismissing writ of error on ground that plaintiff had "submitted to a nonsuit in the circuit court"); *United States v. Babbitt*, 104 U.S. 767, 768 (1881) (explaining that "consent to the judgment below" waived right to appeal); *see also Keena v. Groupon, Inc.*, 886 F.3d 360, 365 (4th Cir. 2018) (recognizing, in this exact procedural context, "the longstanding principle that a party

is not entitled to appeal from a consensual dismissal of her claims").

As a result, a unanimous Court ruled that plaintiffs can't evade the discretionary framework for appealing class-certification denials by simply voluntarily dismissing their claims with prejudice and manufacturing appellate jurisdiction.

### III.

Before considering *Microsoft*'s impact on *Omstead*, we pause to explain our framework for examining the interplay between circuit and Supreme Court precedent. Our circuit's published opinions on the law are authoritative once issued and remain binding on subsequent panels of this court. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). Generally speaking, the law announced in such cases can be changed only by Congress, our court itself sitting en banc, or the Supreme Court. *Id.*

Sometimes, though, our precedent becomes effectively overruled by a Supreme Court decision that is closely on point, even if the decision does not do so expressly. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc). While following our past decisions is important to preserve the stability of circuit law, that is secondary to following the Supreme Court. *Id.* After all, "unless we wish anarchy to prevail within the federal judicial system," we are always required to follow the controlling opinions of the Court. *Hutto v. Davis*, 454 U.S. 370, 375 (1982). Importantly, this deference extends to the reasoning of Court decisions, too—not just their holdings. *See Thompson v. Hebdon*, 909 F.3d 1027, 1043 (9th Cir. 2018); *see also United States v. Slade*, 873 F.3d 712, 715 (9th Cir. 2017) (finding a prior decision

effectively overruled because its reasoning skipped an "analytical step" that the Supreme Court later required).

So when the reasoning of a prior case of ours is "clearly irreconcilable" with the reasoning of a subsequent Supreme Court case, a three-judge panel is not bound by the former and is free to reject it as "effectively overruled." *Miller*, 335 F.3d at 893. This happens when the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* at 900. Thus, even when the issue in the Supreme Court case is not "identical" to the one decided by our court, the Supreme Court's reasoning may be controlling nonetheless. *Id.* This burden is high, but not insurmountable. *See Aleman Gonzalez v. Barr*, 955 F.3d 762, 765 (9th Cir. 2020).

In employing this principle, we've said it is enough that the issues, while not carbon copies, "ultimately derive[d] from the same inquiry." *SEIU Local 121RN v. Los Robles Reg'l Med. Ctr.*, 976 F.3d 849, 855 (9th Cir. 2020). In *SEIU Local 121RN*, our prior precedent held that courts may construe a broad arbitration clause in a labor agreement as conferring authority on the arbitrator to decide arbitrability. *Id.* at 853 (discussing *United Bhd. of Carpenters & Joiners of Am., Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308 (9th Cir. 1996)). But the Supreme Court had since held that in both the commercial and labor contexts, whether parties have agreed to submit their dispute to arbitration is presumptively a matter for the court to decide. *Id.* at 854 (discussing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)). While the Supreme Court case dealt with *formation* of an arbitration agreement generally and ours dealt with *delegation* to the arbitrator, more fundamentally, both cases dealt with what the parties agreed

to have the arbitrator decide. *Id.* at 855. The "incompatibility of the rationale[s]" of the two cases was enough to render them "clearly irreconcilable." *Id.* at 860. The Supreme Court's decision therefore trumped our own. *Id.* at 861.

And in *Dorman v. Charles Schwab Corp.*, we viewed the Supreme Court's holding that arbitrators can competently interpret and apply federal statutes as a *general matter* as effectively overruling our holding that ERISA claims *in particular* could not be competently decided by arbitrators. 934 F.3d 1107, 1111–12 (9th Cir. 2019). The Court's decision had swallowed our prior decision, even if it didn't do so explicitly. *Id.* at 1112.

At the end, our cases distill to a simple principle: when a rule announced by this court and a rule later announced by the Supreme Court cannot both be true at the same time, they are clearly irreconcilable. In such a case, the former must give way to the latter. On the other hand, where two rules can coexist,[5] we leave them both undisturbed. At bottom, this just reflects the definition of "irreconcilable."[6]

---

[5] *See, e.g.*, *United States v. Grandberry*, 730 F.3d 968, 973 (9th Cir. 2013) (finding our precedent—that law enforcement must have probable cause to believe that a parolee lives at the home to be searched before executing a warrantless search pursuant to a parole condition—was not irreconcilable with a Court holding that parolees may be subject to suspicionless searches of their *person*, not their home; *see also United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013) (finding the Court's application of *Apprendi* to criminal fines did not effectively overrule our precedent that *Apprendi* doesn't apply to restitution).

[6] *See Oxford English Dictionary Online*, https://www.oed.com/vie w/Entry/99616? (defining "irreconcilable" as "[o]f statements, ideas,

## IV.

Applying these principles to this case, we hold that *Omstead* has been effectively overruled by the Supreme Court's decision in *Microsoft*. Class certification and compelling arbitration are not the same. But the ultimate, fundamental question is whether a plaintiff may bypass a regime for discretionary appellate review through a voluntary dismissal. Because the Supreme Court has clearly rejected that tactic, we must do so as well. At its core, the Supreme Court's reasoning in *Microsoft* is clearly irreconcilable with our approach in *Omstead*.

## A.

First and foremost, Langere's voluntary-dismissal tactic undermines the discretionary appellate-review scheme designed by Congress in the FAA. *See* 9 U.S.C. § 16. That section of the FAA embodies "Congress' deliberate determination that appeal rules should reflect a strong policy favoring arbitration." *Stedor Enterprises, Ltd. v. Armtex, Inc.*, 947 F.2d 727, 730 (4th Cir. 1991) (simplified). It does so by privileging arbitration over litigation: any order refusing to compel arbitration is immediately appealable, even if interlocutory in nature. *Id.* (citing 9 U.S.C. § 16(a)(1) and (2)). On the other hand, no appeal as of right exists from an order compelling arbitration until the arbitration has concluded. *Id.* It is only by leave of the courts that an appeal may be brought before then. 9 U.S.C. § 16(b); 28 U.S.C. § 1292(b).

---

etc.: That cannot be brought into harmony or made consistent; incompatible").

The dismissal tactic here is antagonistic to Congress's plan because it transforms discretionary, interlocutory appeals of orders compelling arbitration into appeals as of right. As a result, Congress's final decision rule is rendered into "a pretty puny one," *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872 (1994), and its scheme for discretionary appellate review of arbitration orders is nullified.

This concern applies with even more force here, since Langere has unilaterally removed the district court from any role in the appellate process. Under the FAA, to appeal an interlocutory arbitration order, the plaintiff must first seek the concurrence of the district court. 28 U.S.C. § 1292(b). Langere did not do so and instead filed for voluntary dismissal without court order. Unlike in *Microsoft* when the plaintiffs at least sought district court blessing for its stipulated dismissal, 137 S. Ct. at 1711, Langere's conduct has removed the district court completely from the picture and further undermined the will of Congress.

Second, Langere's voluntary-dismissal tactic "invites protracted litigation and piecemeal appeals." *Microsoft*, 137 S. Ct. at 1713. Since the strategy removes the courts' discretion in policing appeals and places appellate rights exclusively in the hands of plaintiffs, nothing prevents them from exercising this option more than once, "stopping and starting the district court proceedings with repeated interlocutory appeals." *Id.* at 1713. This directly undermines Congress's effort in the FAA "to prevent parties from frustrating arbitration through lengthy preliminary appeals." *Stedor Enterprises, Ltd.*, 947 F.2d at 730. Indeed, a case might ping pong back and forth between the district and circuit courts with every new ground for compelling

arbitration, if this voluntary-dismissal tactic were allowed to proceed.

Third, like in *Microsoft*, the dismissal tactic here is one-sided: only plaintiffs, never defendants, may force the immediate appeal of an order compelling arbitration. It is true that 9 U.S.C. § 16(a) favors defendants by permitting the immediate appeal of an order *denying* arbitration. But, "whatever similarities or differences there are between plaintiffs and defendants" in arbitration appellate rights is a "question[] of policy" left for Congress to decide. *Microsoft*, 137 S. Ct. at 1715 (simplified). Reasonable people might disagree about the propriety of arbitration, but it's not our prerogative to rethink Congress's policy judgments. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

Were we to replace three words in *Microsoft*, "denying class certification," with "compelling arbitration," and substitute "Rule 23(f)" with "§ 16(b)," that decision would be indistinguishable from our own. One case is about class certification and one is about arbitration. But we cannot cover our eyes to binding Court decisions on that basis alone. The reasoning of *Microsoft* was that the voluntary-dismissal device cannot be permitted to subvert the final judgment rule or a finely wrought, discretionary-appellate regime. And that is precisely what the gambit before us now purports to do. Simply, the rationales of *Omstead* and *Microsoft* are incompatible and irreconcilable. For that reason, we conclude that *Omstead*'s jurisdictional holding is overruled.

**B.**

Our decision today hardly breaks new ground. Rather, we just solemnize what seems obvious. Our court has previously acknowledged—on two separate occasions—that *Microsoft* effectuated a change in law in our circuit for the

purposes of Federal Rule of Civil Procedure 60(b).  *See
Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 447–48 (9th
Cir. 2019) (acknowledging that *Microsoft* represented a
change in the law from Ninth Circuit precedent such as
*Omstead)*; *Bobbitt v. Milberg LLP*, 807 F. App'x 628, 630
(9th Cir. 2020) (observing that "before [*Microsoft*]," the
court could review interlocutory orders after a plaintiff
voluntarily dismissed his claims with prejudice, citing
*Omstead*).    And in *Johnson* we held, notwithstanding
*Omstead*, that § 1292(b) provides the *sole* route for
immediate appeal of an order staying proceedings and
compelling arbitration.  745 F.3d at 1023.  But *Johnson* did
not deal with *Omstead* explicitly.  In light of *Microsoft*,
we pick up where *Johnson* left off and formally put *Omstead* to
bed.  The Supreme Court, too, appears to have confirmed our
understanding, albeit in dicta.  It has subsequently described
its holding in *Microsoft* as standing for the proposition that
"plaintiffs cannot generate a final appealable order by
voluntarily dismissing their claim."  *Lamps Plus, Inc. v.
Varela*, 139 S. Ct. 1407, 1414 n.2 (2019) (emphasis
omitted).[7]

---

[7] Our decision in *Rodriguez v. Taco Bell Corp.*, is not to the contrary
since it had nothing to do with a discretionary appellate regime mandated
by Congress.   896 F.3d 952 (9th Cir. 2018).   There, we simply
acknowledged that *Microsoft* does not prevent appellate jurisdiction
when a district court grants partial summary judgment as to some claims
and grants the plaintiff's voluntary dismissal as to the remaining claims.
*Id.* at 955.

Further, in *Rodriguez*, we relied on our decision in *Brown v.
Cinemark USA, Inc.*, 876 F.3d 1199 (9th Cir. 2017), which explained that
*Microsoft* did not preclude appellate jurisdiction because "the present
case was not a unilateral dismissal of claims, but a mutual settlement for
consideration reached by both parties which expressly preserved certain
claims for appeal."  *Id.* at 1201.  Unlike in the present case, the

18        LANGERE V. VERIZON WIRELESS SERVS.

Applying *Microsoft*'s rationale to the appeal of orders to
compel arbitration puts us in line with at least one other
circuit. In *Keena*, the Fourth Circuit likewise applied the
*Microsoft* factors to determine that plaintiffs cannot create
appellate jurisdiction by voluntarily dismissing their claims
after an arbitration order. 886 F.3d at 363–65 (explaining
that, instead, "a party seeking to appeal an order staying the
action and compelling arbitration must first secure
permission from both the district court and the court of
appeals under 28 U.S.C. § 1292(b)").

Two other out-of-circuit cases do not counsel in favor of
the *Omstead* rule either. First, the Fifth Circuit has
concluded that *Microsoft* does not preclude the immediate
appeal of an *involuntary* dismissal for want of prosecution,
before affirming the district court's dismissal because the
litigant refused to arbitrate. *See Griggs v. S.G.E. Mgmt.,
L.L.C.*, 905 F.3d 835 (5th Cir. 2018). That case obviously
offers no support to Langere, who has voluntarily dismissed
his claims. Second, Langere points to the Tenth Circuit,
which concluded that a voluntary dismissal with prejudice
was appealable as a final order. *See Spring Creek Expl. &
Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003,
1016 (10th Cir. 2018). But that conclusion depended on the
fact that dismissal was stipulated to by the parties, and that
the case fully resolved in arbitration before the appeal. *Id.*
With a procedural posture unlike *Microsoft* and the case
before us now, *Spring Creek* does not help Langere, either.

---

procedural history in *Brown* did "not implicate the concerns raised in
[*Microsoft*]." *Id. Brown* therefore has no bearing on our decision today.

LANGERE V. VERIZON WIRELESS SERVS.          19

## V.

After careful consideration of our own precedent, and that of the Supreme Court, we conclude that the voluntary dismissal of claims following an order compelling arbitration does not create appellate jurisdiction. We therefore **DISMISS** this appeal for lack of jurisdiction.